Suzette Mann WALKER,
Plaintiff/Appellant,

v.

FIRST STATE BANK,
Defendant/Appellee.

Court of Appeals of Tennessee,
Western Section at Jackson.

April 28, 1992.

Application for Permission to Appeal
Denied by Supreme Court
Jan. 19, 1993.

J. Houston Gordon, Gordon & Forrester, Covington, for plaintiff-appellant.

Glen Reid, Jr. and McDonnell Boyd, Memphis, for defendant-appellee.

TOMLIN, Presiding Judge, Western Section.

Plaintiff, Suzette Mann Walker ("plaintiff" or "Walker"), filed suit in the Circuit Court of Haywood County against First State Bank ("defendant" or "bank") seeking compensatory and punitive damages. She alleged that the bank caused her serious financial losses as a result of its failure to inform her of the full and true facts concerning the financial condition of her brother, Bobby Mann, a long-time customer and depositor of the bank. Plaintiff charged the bank with fraud, misrepresentation, breach of duty of good faith, and a statutory failure to disclose her brother's true financial condition. The trial court granted the bank's motion for summary judgment. Notwithstanding the fact that plaintiff raises five issues for our consider-

ation, the sole issue on appeal is whether the trial court erred in granting defendant's motion for summary judgment. For the reasons stated hereafter, we affirm the trial court.

The depositions, affidavits, and exhibits filed by the parties reveal the following material facts: Plaintiff's brother, Bobby Mann, began farming in Haywood County in 1957. He raised both crops and hogs. Throughout his farming career he borrowed money from both the bank and the Farmers Home Administration (FHA). He borrowed regularly from both institutions until he ceased farming in 1989.

Due to several factors, including severe drought conditions in West Tennessee, declining land values, and the increase in the size of operations, the bank determined that Mann needed additional collateral to secure his loans. In 1984, Mrs. Susie Mann, the mother of Bobby Mann and the plaintiff, obligated herself as a guarantor of Mann's debts at the bank. In so doing she pledged real estate owned by her as collateral for his debt. One of the farms relevant to this litigation was a tract containing 151 acres in which Mrs. Susie Mann had a life estate. Mann and plaintiff each owned a one-half remainder interest in this farm. While Mrs. Susie Mann's life estate and Bobby Mann's remainder interest were pledged to secure his loans at the bank, plaintiff's remainder interest was not.

In the spring of 1985, after paying the outstanding interest and a small reduction of principal on his bank loans, Mann obtained a $150,000 crop loan from FHA. He was unable to pay on the bank loans when they fell due in December, 1985. Some two months later, the bank sent both Mann and his mother a letter stating that Mann's note in the amount of $799,000 was past due. The bank advised that on or before March 10, 1986 they were to pay all of the interest plus five percent of the principal.

At that time Mann requested plaintiff to pledge her remainder interest in the real estate in question as additional collateral for his loans at the bank. While plaintiff testified she understood that her involvement was necessary to permit Mann to get

a crop loan, she readily added that it was her brother, and her brother alone, who asked her for help with his loans at the bank. She realized she would be pledging her interest in the farm to assist him because the bank needed additional collateral for his loans. At that time plaintiff was aware that her mother had put up her land for collateral as well, and plaintiff fully realized that her brother needed additional collateral at the bank.

Plaintiff's brother testified that at the time he requested her to pledge her interest in the real estate in question as collateral, he suggested that she contact their first cousin, Pat Mann, Jr., a Brownsville attorney, so that he could explain the transaction to her. Initially, plaintiff denied discussing this matter with Attorney Mann, stating she did not feel she needed to discuss the transaction with anyone. She later conceded that she may have briefly talked to him, stating the only explanation she ever received was "the land was needed for collateral because Bobby had a big debt".

On May 19, 1986, plaintiff, along with her brother and mother, went to the bank to execute the necessary documents. Also present were Jerry Swetland, an officer of the bank and Pat Mann as the bank's attorney. Plaintiff, along with her brother and mother, executed a Deed of Trust. This instrument stated in part that it was given to secure the beneficiary (the bank) for the payment of a promissory note of the same date in the principal sum of $397,000.00.

Following the execution of the necessary documents, plaintiff, along with her mother, brother and his wife, were presented a letter from the bank which explained the transaction. It read:

Dear Mr. and Mrs. Mann, Mrs. Mann and Mrs. Walker:

On this date, May 19, 1986, First State Bank advanced a $397,000.00 loan in favor of R.A. Mann Jr. and Lynne T. Mann. As collateral the bank took 365.5 acres of farmland owned by Mrs. Susie Mann, which includes one farm totaling approximately 151 acres, and which is held as tenants in common by Bobby Mann and

Suzette Walker after the life estate of Mrs. Susie Mann. Due to the size of the loan, all of the 365.5 acres of land were required to be used as collateral.

At a time in the future when the appraisal value of the approximately 214 acre tract equals or exceeds the balance due on the loan, the First State Bank will release the said 151 acres mentioned above.

Plaintiff admitted she received the letter and did not ask anyone present for any further explanation of the transaction. By the same token, plaintiff does not contend that either the bank officer or its attorney made any representation to her at the closing that was contrary to the terms of the trust deed or the letter explaining the transaction.

In July, 1988, Bobby Mann, his sister and mother requested that the bank allow Mann and his mother to transfer his remainder and her life estate in the real estate in question to plaintiff so that Mann could qualify for a larger crop subsidy. The bank agreed and thereafter the full title to the property was vested in plaintiff by virtue of deeds executed by Mann and his mother. Subsequently, the May, 1986 deed of trust was released and a new deed of trust and Promissory Note in the amount of $114,000 was executed by Mann, his wife and plaintiff.

In March, 1989 Mann was able to make only partial repayment on his 1988 crop loan. He again negotiated with the bank for the restructuring of his debt. He employed a financial consultant who submitted to the bank a debt restructure proposal dated April 10, 1989. This proposal provided that the balance outstanding on the $114,000 note previously executed by plaintiff be transferred to plaintiff as a debt, with her signing a new note secured by real estate then owned by her in fee simple. The balance owing at that time was slightly less than $112,000.00. The proposed new note was to carry a below-market interest rate and a moratorium on payment of principal for two years. Plaintiff, her brother and mother ultimately signed a letter agreement to the bank restructuring

her brother's debt along the lines suggested by the financial consultant. On July 28, 1989, plaintiff signed a new deed of trust and promissory note in accordance with the terms and conditions previously agreed upon.

Ultimately, plaintiff's brother was allowed to carry out an orderly liquidation of his debts at the bank without having to file bankruptcy. The property in question was disposed of in this same fashion, with the proceeds used to pay against the debt represented by the most recent promissory note.

 While summary judgment should not be used as a substitute for the trial of disputed factual issues, it can provide an appropriate and efficient means to dispose of cases that can be decided on legal issues alone because there are no material disputed facts. *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547 (Tenn.1981). In ruling on a summary judgment motion, this court, like the trial court, must review the facts as stated in a light most favorable to the non-moving party and draw all legitimate conclusions of fact in favor of that party. *Daniels v. White Consolidated Industries,* 692 S.W.2d 422 (Tenn.App.1985). The moving party carries the burden of proving that he is entitled to a judgment as a matter of law in addition to showing that there are no genuine issues of material fact. *Taylor v. Nashville Banner Publishing Co.,* 573 S.W.2d 476 (Tenn.App. 1978); Rule 56.03, T.R.C.P. However, not all factual disputes will prevent the granting of summary judgment. In order to render a summary judgment improper, the disputed facts must bear directly and materially upon the legal elements of the claim or defense being tested by the summary judgment motion. *Macon County Livestock Market, Inc. v. Kentucky State Bank,* 724 S.W.2d 343 (Tenn.App.1986)

## I. FRAUDULENT CONCEALMENT

 Plaintiff's claims against the bank are based upon the premise that the bank should have volunteered information concerning Mann's financial condition as well as the scope of his dealings with the bank.

Specifically, plaintiff contends defendant had a duty, which it breached, to disclose to her the nature and amount of her brother's debts, as well as the alleged opinion held by the bank that his debts were undercollateralized and that he likely would be unable to repay them. She further contends that the bank permitted her to draw the conclusion that the loan being sought by her brother was a crop loan and not a refinancing of preexisting debts.

Courts of this state have ruled that liability for non-disclosure can arise only in cases where the person sought to be held responsible had a duty to disclose the facts at issue. In *Domestic Sewing Machine Co. v. Jackson*, 83 Tenn. 418 (1885) our Supreme Court stated:

> In all cases, concealment or failure to disclose, becomes fraudulent only when it is the duty of a party having knowledge of the facts to discover them to the other party: 2 Pom.Eq., sec. 902. And this author, in the same section says: "All the instances in which the duty to disclose exists and in which a concealment is therefore fraudulent, may be reduced to three distinct classes:
>
> 1. Where there is a previous definite fiduciary relation between the parties.
>
> 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.
>
> 3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this last class."

*Id.* at 424–25.

The above language was cited with approval and applied by the Middle Section of this Court speaking through Judge Koch in *Macon County*, cited *supra*. The *Macon County* case involved factual circumstances quite similar to the case at bar.

Following the authority of *Macon County*, it appears to us that in the case under consideration, the bank would be liable to plaintiff only if it had a duty to disclose her brother's financial condition to her. The record before us establishes that the case *sub judice* does not involve one of the three special circumstances as set out in *Domestic Sewing Machine, supra.*

In *Macon County*, this court adopted and approved the following statement of principle found in *Klein v. First Edina National Bank*, 293 Minn. 418, 196 N.W.2d 619 (1972):

> We believe the correct rule to be that when a bank transacts business with a depositor or other customer, it has no special duty to counsel the customer and inform him of every material fact relating to the transaction—including the bank's motive, if material, for participating in the transaction—unless special circumstances exist, such as where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying upon the bank so to counsel and inform him.

*Macon County*, 724 S.W.2d at 350.

It is clear from this record that plaintiff never consulted the bank or any of its officers concerning the propriety or wisdom of placing her interest in the farm as collateral for her brother's loan. She never sought one iota of information concerning her brother's financial condition from any officer of the bank or the bank's attorney. Furthermore, the record reflects that no agent of the bank made any unsolicited representation to her concerning her brother's financial condition or the legal implications of her actions, nor did the bank ever have reason to believe that plaintiff was relying on it for advice and counsel.

Plaintiff admits in her testimony that her brother asked her to pledge her interest in the property as collateral for his loan. She knew that he had a "big" loan and she was pledging her interest in the farm to assist him. She admitted that she was given a detailed letter concerning the initial transaction, but she asked no questions of the bank officer, her attorney cousin, or her brother.

In *Transouth Mortgage Co. v. Keith*, 1985 W.L. 4677 (Tenn.App. Dec. 24, 1985), this court had occasion to consider a similar matter involving a guaranty agreement. In that case the court stated:

[T]here is no duty on the party to whom the guaranty is directed to notify the guarantor of the business practices or financial difficulties of the party whose performance is being guaranteed, whether such practices occurred prior to the execution or during the term of the guaranty and whether such activities were known or should have been known by the party guaranteed. To hold otherwise would make one party the de facto guardian of the other.

*Id.* at *3.

In addition, the *Transouth* court observed:

The facts that appellant charges as a basis for fraud were available to appellant if he had simply inquired. Had he inquired, defendant would have been required to answer such inquiry truthfully. He simply never inquired.

*Id.*

As we have already observed, plaintiff had numerous opportunities to inquire about the exact amounts and nature of her brother's debts. She could have inquired of her brother; she could have inquired of her first cousin, the bank's attorney; and she could have inquired of an officer of the bank. In representing the bank, its officer or attorney would have been under a duty to respond fully, fairly and accurately. At every turn, plaintiff chose not to inquire about any of the details of this transaction at any time. As the *Transouth* court stated, the bank was under no obligation to "hold her hand" throughout this extended transaction.

■ In passing, we note that for the first time in her brief and argument before this court plaintiff alleges that the jury could conclude from the facts that a conspiracy existed between the bank and her brother. Plaintiff raised no such allegations in the trial court in her pleadings; therefore, this allegation will not be considered on appeal by this Court. Secondly, we note that there is absolutely no proof whatsoever in this record to even imply the possibility of any such conspiracy.

## II. LACK OF CONSIDERATION

■ Next, plaintiff contends that there is an absence or lack of consideration for her note and trust deed given to the bank, thus the instruments are void and she has no obligation to the bank. We disagree. Plaintiff testified unequivocally that she fully realized that the pledging of her interest in the farm property involved was necessary because the bank needed additional collateral to secure the large debt of her brother. In *Palmer v. Dehn,* 29 Tenn.App. 597, 198 S.W.2d 827 (1946), this Court stated:

For there to be a consideration in a contract between parties to the contract it is not necessary that something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration.

*Id.* 198 S.W.2d at 828.

As a result of plaintiff's pledging her land as additional collateral for her brother's loans, there was indeed a benefit to the bank. In addition, an extension of time to pay a debt brought about by the execution of renewal notes to a bank constitutes sufficient consideration. *See Bank of Crockett v. Cullipher,* 752 S.W.2d 84 (Tenn.App. 1988).

## III. DUTY OF GOOD FAITH

■ Lastly, we consider plaintiff's claim of lack of good faith. In her complaint plaintiff averred:

the bank had a duty to disclose all of the above facts which it in good faith knew existed and that the bank's failure to so disclose violated its 'good faith' duty as required under Tennessee Code Annotated 47–1–203 which provides, in pertinent part:

**47–1–203. Obligation of good faith.**—Every contract or duty within chapters 1 through 9 of this title imposes an obligation of good faith in its performance or enforcement.

In support of her contention plaintiff relies upon the case of *Lane v. John Deere Co.,* 767 S.W.2d 138 (Tenn.1989). Plaintiff seeks to assert an independent cause of

action sounding in tort for the breach of the obligation of good faith on the basis of the above-quoted Code section and *Lane.* In our opinion, her reliance upon these authorities is misplaced.

The implied duty of good faith created by § 47–1–203 goes to the performance or enforcement of the contract, not to its execution. *See TSC Industries v. Tomlin,* 743 S.W.2d 169 (Tenn.App.1987); *Sanders v. First Nat. Bank in Great Bend,* 114 B.R. 507 (M.D.Tenn.1990). In addition, in *In Re DG & Associates,* 9 B.R. 94 (E.D.Tenn. 1981), the court held that the obligation of good faith found in the UCC counterpart to T.C.A. § 47–1–203 (UCC 1–203) applies only to duties imposed by the UCC.

The holding in *Lane* is also distinguishable from the case at bar. Though the *Lane* court relied in part on T.C.A. § 47–1–203, the court was dealing with a situation involving the acceleration of payments by a creditor. The provisions requiring good faith in such a transaction are specifically set forth in yet a different code section, T.C.A. § 47–1–208. Subsequently, the Eastern Section of this court in the case of *Dia–Tech Corp. v. First Tennessee Bank,* 1989 WL 126278 (Tenn.App. Oct. 23, 1989), stated:

> *Lane* does not recognize lack of good faith as applied to T.C.A. § 47–1–203 to create an independent cause of action. *Lane* only recognizes lack of good faith may deprive a creditor of the right to accelerate payment.

*Id.* at *4.

We find that the judgment of the trial court granting summary judgment to defendant bank is supported by the uncontradicted material evidence in this record. Accordingly, the trial court's judgment is affirmed. Costs in this cause on appeal are taxed to plaintiff, for which execution may issue, if necessary.

TOMLIN, CRAWFORD and HIGHERS, JJ., concur.