# IN THE COURT OF APPEALS OF TENNESSEE,
## AT NASHVILLE

_____

|  |  |  |
|---|---|---|
| **RICHARD M. WRIGHT, III, et al,** | ) | Davidson County Chancery Court |
|  | ) | No. 89-1720-I |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9709-CH-00470 |
|  | ) |  |
| **C & S FAMILY CREDIT, INC., et al,** | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |

**FILED**

**April 24, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

_____

From the Chancery Court of Davidson County at Nashville.
**Honorable Irvin H. Kilcrease, Jr., Chancellor**

**D. Ronald Ingram**, Goodlettsville, Tennessee
Attorney for Defendant/Appellant.

**Joseph L. Lackey, Jr.**, Nashville, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Defendant C & S Family Credit, Inc., appeals the trial court's judgment entered in favor of Plaintiff/Appellee Richard M. Wright, III, in the amount of $122,048. The trial court's judgment was predicated on C & S's failure to disclose the existence of a judgment lien on property being purchased by Wright with proceeds from a loan transaction with C & S. We reverse the trial court's judgment based on our conclusion that, under the circumstances of this case, C & S owed no duty to disclose to Wright the existence of the judgment lien.

In January 1989, Wright and C & S engaged in a commercial loan transaction whereby C & S loaned to Wright and his partner in a joint venture, Ellis B. Goodloe, the sum of $662,000. Many of the details of the transaction are not relevant to this appeal. In essence, however, Wright's purpose in securing the loan was to acquire real estate for future development, including a piece of property in Wilson County. The loan was collateralized with the newly-acquired property and with other property previously owned by Wright and Goodloe. The vendor of the newly-acquired property was Larimore Foster.

On December 13, 1988, prior to the loan closing, Rodney M. Scott of Pro Title Services, Inc., caused a title insurance commitment to be issued relative to the Wilson County property and the other property involved in the transaction. In connection with Scott's services, Wright and Goodloe paid the sum of $32,400 to Pro Title Services for Scott to pay back taxes on the Wilson County property. The title insurance commitment issued by Scott reflected that a judgment lien in the amount of $150,385.97 in favor of Sovran Bank and against Ellis B. Goodloe and Larimore Foster had been recorded in both Williamson County and Davidson County, Tennessee. The title insurance commitment did not reveal the existence of such a judgment lien in Wilson County as the lien had not been recorded in Wilson county when the commitment was issued.

In addition to performing the title work on the property, and in accordance with the requirements of the loan application, Rodney Scott of Pro Title Services handled the loan closing on January 6, 1989. Wright and Goodloe appeared at the loan closing and signed the documents presented to them. According to Wright and Goodloe, neither Scott of Pro Title Services nor Charles Mullins, C & S's branch manager, explained the significance of the documents the men were signing, and they did not inform the men of the existence of any liens on the property being acquired.

Wright and Goodloe also admitted, however, that they never inquired as to any of these matters during the loan closing. At the time of the loan closing, Wright and Goodloe simultaneously purchased the Wilson County property and another piece of property from Larimore Foster. Foster, who executed a quitclaim deed to the Wilson County property, also did not disclose the existence of any liens on the property. Pursuant to the parties' loan agreement, C & S received a mortgage on the Wilson County property and the other property involved in the transaction.

Several days after the loan closing, Scott recorded the quitclaim deed to the Wilson County property. At that time, Scott discovered that, between the time of the issuance of the title insurance commitment and the closing of the loan, Sovran Bank had recorded its judgment against Goodloe and Foster in Wilson County and, thus, the judgment appeared as a $150,385.97 lien on the Wilson County property recently sold by Foster to Wright and Goodloe. When Scott called Charles Mullins at C & S to inform him of his discovery of the Wilson County judgment lien, Mullins instructed Scott to record the deed anyway and stated that they would "straighten it out later." Mullins was involved in negotiations with Sovran Bank to enter into a subordination agreement relative to at least one of the other judgment liens, and he was hopeful that the Wilson County judgment lien also could be subordinated. Although only about half of the loan proceeds had been disbursed at this time, Mullins proceeded to disburse the remaining loan proceeds, including the funds necessary to purchase the Wilson County property. Only after disbursing all of the loan proceeds did Mullins inform Wright of the existence of the Wilson County judgment lien.

Wright subsequently brought this action against C & S in which he contended, *inter alia*, that C & S had breached its duty to disclose any known defects in the title to the Wilson County property and that Wright suffered damages as a result of this breach. After conducting a bench trial, the trial court entered a judgment in favor of Wright in the amount of $122,048. In doing so, the trial court expressly found that C & S had the duty to disclose the existence of the Wilson County judgment lien to Wright. This appeal followed.

Liability for non-disclosure may be imposed only in cases where the party sought to be held responsible had a duty to disclose the facts at issue. *Walker v. First State Bank*, 849 S.W.2d 337, 341 (Tenn. App. 1992). "As a general rule, one party to a transaction has no duty to disclose

material facts to the other." ***Macon County Livestock Mkt., Inc. v. Kentucky State Bank***, 724 S.W.2d 343, 350 (Tenn. App. 1986) (quoting ***Klein v. First Edina Nat'l Bank***, 196 N.W.2d 619, 622 (Minn. 1972)).

An exception to this general rule arises where there "is a previous definite fiduciary relation between the parties," or where the contract or transaction "is intrinsically fiduciary and calls for perfect good faith." ***Macon County Livestock Mkt.***, 724 S.W.2d at 349 (quoting ***Domestic Sewing Mach. Co. v. Jackson***, 83 Tenn. 418, 424-25 (1885)); ***accord Walker v. First State Bank***, 849 S.W.2d at 341. An exception also arises where the evidence demonstrates that "one or each of the parties to the contract expressly reposes a trust and confidence in the other." ***Id***.

After carefully reviewing the evidence presented, we conclude that none of the foregoing relationships or circumstances exist in this case which would impose a duty to disclose upon C & S. Under Tennessee law, the debtor/creditor relationship does not constitute a fiduciary relationship. ***Glazer v. First Am. Nat'l Bank***, 930 S.W.2d 546, 550 (Tenn. 1996); ***Macon County Livestock Mkt.***, 724 S.W.2d at 349; ***see also Merchants & Planters Bank v. Williamson***, 691 So. 2d 398, 404 (Miss. 1997) (noting that "the vast majority of courts" have concluded that, as a matter of law, "the relationship between a mortgagor and mortgagee is not a fiduciary one"). Absent special facts and circumstances, "the dealings between a lender and borrower are not inherently fiduciary." ***Oak Ridge Precision Indus., Inc. v. First Tennessee Bank Nat'l Ass'n***, 835 S.W.2d 25, 30 (Tenn. App. 1992). Accordingly, neither C & S's relationship to Wright nor the loan transaction itself imposed a duty of disclosure upon C & S.

Moreover, the evidence presented in this case does not support the finding that Wright expressly reposed a trust and confidence in C & S. In order for a duty of disclosure to arise under this exception, the evidence must show that the lending institution either knew or had reason to know that the customer was placing his trust and confidence in the lender and was relying upon the lender to counsel and inform him. ***Macon County Livestock Mkt.***, 724 S.W.2d at 350 (citing ***Klein v. First Edina Nat'l Bank***, 196 N.W.2d at 622). Wright testified that, had Mullins informed him of the Wilson County judgment lien, he would have instructed Mullins to stop the transaction and to "do nothing." Wright never testified, however, that he placed any type of trust or confidence in C & S

or Mullins to inform him of this or any other information. Wright testified that he paid a fee to Pro Title Services to pay back taxes on the Wilson County property, but there was no testimony that Wright relied on C& S to perform a title search or to disclose any outstanding liens on the property. Although Wright signed an affidavit at the loan closing certifying that he knew of no claim to the property which was not disclosed in the title report, Wright apparently did not read the title insurance commitment prepared by Pro Title Services, which would have revealed the existence of the judgment as a lien in Williamson and Davidson counties. At the time of the closing, Wright was not aware that Sovran Bank had a judgment against Goodloe and Foster, nor did Wright direct any inquiries to C & S regarding this or any other matter. Absent evidence that Wright expressly relied upon C & S to counsel and inform him of such liens, we conclude that a judgment predicated on C & S's failure to disclose such information cannot be sustained. *See Macon County Livestock Mkt., Inc. v. Kentucky State Bank*, 724 S.W.2d 343, 351 (Tenn. App. 1986) (affirming summary judgment entered in favor of bank in action predicated on bank's failure to disclose precarious financial condition of plaintiff's business associate where plaintiff admitted that he did not rely upon bank's representations in entering transaction but, rather, relied upon associate's statements); *see also Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 656 P.2d 1089, 1093 (Wash. Ct. App. 1983) (holding that construction lender had no duty to disclose contractor's financial difficulties, which included incurring of mechanic's liens on other homes constructed by contractor, where there was no evidence that lender received any greater economic benefit from transaction other than normal mortgage and where borrower never inquired as to existence of any pending lien actions).

In arguing that the trial court's judgment should be upheld, Wright cites *Gray v. Boyle Investment Co.*, 803 S.W.2d 678 (Tenn. App. 1990), in which the defendants were held liable for their failure to disclose to the purchaser prior to a real estate closing the fact that foreclosure proceedings had been instituted on the subject property. While we recognize some factual similarities between *Gray* and the present case, we also note that the relationships between the parties in *Gray* differed from the debtor/creditor relationship found in the present case. In *Gray*, the defendants were the real estate broker who handled the transaction, the attorney who performed the closing, and the vendor who signed a warranty deed to the property. *Id*. at 682-84. Accordingly, the *Gray* defendants' relative duties to disclose any adverse claims against the subject property were not governed by the duty of disclosure applicable to the debtor/credit relationship.

Moreover, we note that the matter which the defendants failed to disclose in *Gray*, *i.e.* the fact that foreclosure proceedings were in progress, was not a matter of public record. Even where a party to a transaction does have a duty to disclose material facts, this duty does not apply if "common observation or ordinary diligence would have furnished the information." *Gray*, 803 S.W.2d at 683 (citing *Simmons v. Evans*, 206 S.W.2d 295 (Tenn. 1947)). In imposing a duty to disclose in *Gray*, we reasoned that, "[o]bviously, an ordinary citizen would not search the foreclosure notices published in trade papers for any notice concerning property which he is purchasing and which will be handled by a closing attorney." *Gray*, 803 S.W.2d at 683.

In contrast, the matter which C & S failed to disclose in the present case, the existence of the judgment lien in Wilson County, was a matter of public record. Upon Sovran Bank's recordation of the judgment lien, Wright was charged with constructive notice of the lien as a matter of law. *Moore v. Cole*, 289 S.W.2d 695, 698 (Tenn. 1956); *accord Merchants State Bank v. First Tennessee Bank*, 1993 WL 424817, at *2 (Tenn. App. Oct. 22, 1993) (holding that recordation of deed of trust in favor of first mortgagee constituted constructive notice of such deed to second mortgagee); *see also Massachusetts Mut. Life Ins. Co. v. Taylor Implement & Vehicle Co.*, 195 S.W. 762, 765 (Tenn. 1917) (noting that object of recording statutes is to enable purchaser to ascertain from county records whether or not there are any judgment liens on property being acquired); *Hames v. Archer Paper Co.*, 319 S.W.2d 252, 255-56 (Tenn. App. 1958) (indicating that, under recording statutes, registration of judgment lien affords notice of such lien to all the world).

Our conclusion that C & S owed no duty to disclose the existence of the judgment lien in this case is supported by the Georgia Court of Appeals' decision in *Shaw v. Cook County Federal Savings & Loan Ass'n*, 228 S.E.2d 326 (Ga. Ct. App. 1976). There, the plaintiff, Velora Shaw, applied to the Cook County Federal Savings & Loan Association (CCF) for a loan to pay off outstanding liens against her home. *Id*. at 327-28. Pursuant to standard procedure, CCF's attorney ran a preliminary title check on Shaw's home, which revealed an outstanding lien in favor of Farmers & Merchants Bank (FMB). *Id*. at 328. CCF allegedly obtained a subordination agreement from FMB, but the agreement never was filed or recorded because CCF's attorney lost or misplaced the document. *Id*. At the loan closing, CCF's representative, apparently believing that FMB's lien had been subordinated, failed to reveal the existence of the lien and, according to Shaw, even assured

her that no such liens existed. *Id*. at 328-29. In concluding that CCF had no duty to disclose FMB's prior lien, the court reasoned:

> The record shows that CCF's attorney discovered FMB's deed during his title search, indicating that the deed had been duly recorded. Notwithstanding CCF's knowledge that FMB's prior lien existed, the plaintiff, Mrs. Shaw, has shown no reason why CCF would be liable for its failure to disclose information which was a matter of public record and which she herself was charged with knowing.

*Id*. at 329.

The trial court's judgment entered in favor of Wright is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Wright, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)