# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **FRANK MORIMANNO**, | ) | Henderson County Chancery Court |
|  | ) | No. 11248 |
| Plaintiff/Appellee, | ) |  |
|  | ) | C.A. No. W1998-00563-COA-R3-CV |
| VS. | ) |  |
|  | ) |  |
| **TOMMY MIDDLETON**, | ) |  |
|  | ) |  |
| Defendant, | ) |  |
|  | ) |  |
| **AND** | ) |  |
|  | ) |  |
| **CENTRAL STATE BANK and** | ) |  |
| **DON CAMPAGNA AS AGENT** | ) |  |
| **FOR CENTRAL STATE BANK**, | ) |  |
|  | ) |  |
| Defendants/Appellants. | ) |  |

**FILED**

**December 15, 19999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

_____

From the Chancery Court of Henderson County at Lexington.
**Honorable Joe C. Morris, Chancellor**

**David A. Riddick**,
HOLMES, RICH, SIGLER & RIDDICK, P.C., Jackson, Tennessee
Attorney for Defendants/Appellants Central State Bank and Don Campagna.

**Tom Anderson**,
Anderson Law Firm, PLLC, Jackson, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Defendants Central State Bank and Don Campagna appeal the trial court's judgment awarding Plaintiff/Appellee Frank Morimanno $14,500 in damages on his claim for negligent misrepresentation. We affirm the trial court's judgment based upon our conclusion that the evidence does not preponderate against the trial court's decision in favor of Morimanno.

In September 1996, Morimanno agreed to sell his 1992 GMC pickup truck to Tommy Middleton for a price of $16,500. Middleton did not have the funds to buy the truck, so he turned to his banker, Don Campagna, for help in financing the truck's purchase. At the time, Campagna was a loan officer and assistant manager of the Jackson, Tennessee, branch of Central State Bank.

In order to induce both Campagna and Morimanno to consummate the sale of the truck, Middleton represented to them that he soon expected to receive a settlement from a lawsuit in which he was involved. As proof of the forthcoming settlement, Middleton presented two letters that were dated October 6, 1995, and September 9, 1996, respectively, and that purported to be from Middleton's attorney, Michael L. Weinman of Henderson, Tennessee. The first letter was addressed to counsel for Middleton's former employer, Johnson Controls, Inc., and offered to settle Middleton's claim for the amount of $30,000, plus reinstatement. The second letter was addressed to "WHOM IT MAY CONCERN" and contained the following text:

> IN REGARDS TO THE LAW SUIT CONCERNING TOMMY MIDDLETON V. JOHNSON CONTROLS, THE SETTLEMENT WAS SIGNED SEPT. 9, 1996. ALL MONIES AND ENTITLEMENTS AWARDED MR. MIDDLETON WILL BE SENT TO THIS LAW OFFICE NO LATER THAN 45 DAYS FROM THE SIGNATURE DATE.

The letters differed in appearance in that the first letter was printed on the letterhead of Weinman's law firm, Tatum and Tatum, and bore the signature "Mike," while the second letter was printed on plain paper on which someone had typed the name and address of the law firm and signed Weinman's initials.

On September 17, 1996, Morimanno, Middleton, and Campagna met in Campagna's office at Central State Bank to complete the sale of the truck. During this meeting, Campagna

allegedly represented to Morimanno "that Mr. Middleton had a settlement coming due" and that "[a]bout November 18th he would have all his monies." According to Morimanno, Campagna specifically stated that "he had verified with Mr. Middleton's attorney that there was a settlement and it was coming November 18th." Based upon this representation by Campagna, Morimanno agreed to complete the sale of the truck on September 17 but to delay receiving $14,500 of the $16,500 purchase price until November 18.

Morimanno previously had financed his purchase of the truck by obtaining a loan from First Tennessee Bank. During the September 17, 1996, meeting, Campagna gave Morimanno a check for about $2000 so that Morimanno could pay off the balance of the First Tennessee loan. In accordance with Campagna's instructions, Morimanno delivered the check to First Tennessee and obtained the title to the truck. Upon returning to Campagna's office, Morimanno endorsed the truck title and gave it to Campagna. Morimanno then returned home with the expectation that he would receive the remaining $14,500 of the purchase price on November 18, 1996, or shortly thereafter.

Contrary to his representation to Morimanno, Campagna had not verified with Middleton's attorney that Middleton would receive a settlement on November 18. At some point in time, Campagna reached Middleton's attorney, Michael Weinman, by telephone and verified that Weinman represented Middleton. Weinman did not confirm, however, that Middleton soon would be receiving a settlement, and, in fact, Weinman would not divulge any information about his representation of Middleton because Middleton had not authorized him to do so. Nevertheless, based upon the letters presented to him by Middleton, and based upon Weinman's confirmation that he represented Middleton, Campagna believed that Middleton would receive a settlement in November 1996. As Campagna later explained,

> I verified it to the point where I had these letters showing that there
> was supposed to be a lawsuit. I had contacted his attorney and knew
> that there was such an attorney and person, but not to the fact where
> I actually talked with his attorney and could verify that there was a
> lawsuit.

Based upon his belief that Middleton soon would receive a substantial settlement, Campagna had agreed to help finance Middleton's purchase of Morimanno's truck and, in the same transaction, to

consolidate some of Middleton's preexisting loans at Central State Bank. At the transaction's conclusion, Campagna had retained the title to the GMC pickup truck as collateral.

Tommy Middleton did not receive a settlement from Johnson Controls in November 1996, and he never paid Morimanno the $14,500 balance due on the truck's purchase price. The parties later learned that Middleton previously had pursued a lawsuit against Johnson Controls for employment discrimination and breach of employment contract and that Michael Weinman had represented Middleton in the lawsuit. Johnson Controls paid Middleton a sum of money to settle the case, but this settlement occurred in December 1995, not in November 1996 as represented by Middleton. Moreover, the parties learned that Weinman wrote the October 1995 letter to Johnson Controls' counsel in which he offered to settle Middleton's lawsuit, but Weinman did not write the September 1996 "TO WHOM IT MAY CONCERN" letter that informed the reader of a forthcoming settlement. This letter was a forgery.

In April 1997, Morimanno filed this action against Middleton, Central State Bank, and Campagna, as the Bank's agent. Morimanno later obtained a default judgment against Middleton, and this matter proceeded to trial solely on Morimanno's claim for negligent misrepresentation against Campagna and the Bank. At the trial's conclusion, the trial court found in favor of Morimanno and awarded him a judgment in the amount of $14,500, plus prejudgment interest and costs.

On appeal, Campagna and the Bank contend that Morimanno failed to prove the elements of a claim for negligent misrepresentation. The courts of this state have embraced section 552 of the **Restatement (Second) of Torts** as the guiding principle in actions for negligent misrepresentation not based upon privity. *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 432 (Tenn. 1991). Under this principle,

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails

to exercise reasonable care or competence in the obtaining or communicating of the information.

*John Martin Co.*, 819 S.W.2d at 431 (quoting *Restatement (Second) of Torts* § 552(1) (1977)).

In order to prevail on a claim for negligent misrepresentation under section 552, the plaintiff must prove that

> (1) the defendant [was] acting in the course of his business, profession, or employment, or in a transaction in which he [had] a pecuniary (as opposed to gratuitous) interest; *and*

> (2) the defendant supplie[d] faulty information meant to guide others in their business transaction; *and*

> (3) the defendant fail[ed] to exercise reasonable care in obtaining or communicating the information; *and*

> (4) the plaintiff justifiably relie[d] upon the information [to his detriment].

*John Martin Co.*, 819 S.W.2d at 431. Moreover, the plaintiff can recover under this theory only if the plaintiff is the person, or one of a limited group of persons, for whose benefit and guidance the defendant intended to supply the information. *Id*. at 431-32.

In the present case, the Appellants do not dispute that Campagna was acting in the course of his business, profession, or employment. They dispute, however, whether Campagna supplied false information to Morimanno, whether Campagna failed to exercise reasonable care in obtaining or communicating the information, and whether Morimanno justifiably relied upon the information supplied.

Our review of the trial court's judgment in favor of Morimanno is governed by rule 13(d) of the Tennessee Rules of Appellate Procedure, which provides that, in civil actions, the appellate court's review of the trial court's findings of fact "shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984) (quoting T.R.A.P. 13(d)). Under this standard, when a conflict in testimony requires the trial court to make

a determination regarding the credibility of a witness or witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight. *Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 426 (Tenn. 1989). Unless the evidence preponderates against the trial court's findings, this court must affirm, absent an error of law. *Dailey v. Bateman*, 937 S.W.2d 927, 930 (Tenn. Ct. App. 1996).

After carefully reviewing the record, we conclude that the evidence does not preponderate against the trial court's judgment in favor of Morimanno on his negligent misrepresentation claim. To the contrary, Campagna's own testimony supported Morimanno's claim. Campagna did not deny that he represented to Morimanno that he had "verified" with Middleton's attorney that Middleton would receive a settlement in November 1996; however, Campagna had not verified with Middleton's attorney the existence of such a settlement. Although Campagna talked to Middleton's attorney, Michael Weinman, on one occasion and discovered that Weinman represented Middleton, the evidence was undisputed that Weinman did not verify the existence of a forthcoming settlement and that, in fact, Weinman would not divulge any information about his representation of Middleton without Middleton's approval.

Based upon the foregoing evidence, the trial court also could have found that Campagna did not exercise reasonable care in obtaining or communicating the information to Morimanno. Campagna admitted that Middleton's attorney did not confirm the existence of a forthcoming settlement, yet he acknowledged representing to Morimanno that he had "verified" the existence of such a settlement with the attorney. In reality, Campagna concluded that the settlement existed based upon (1) the two letters produced by Middleton that were ostensibly written by his attorney, Michael Weinman, and (2) Weinman's verbal confirmation that he represented Middleton. In light of the limited information conveyed by Middleton's attorney, the trial court properly could have found that Campagna was negligent in representing that he had "verified" with the attorney the existence of the settlement.

Finally, the trial court could have found from the evidence that Morimanno justifiably relied upon the information provided to him by Campagna. Morimanno testified that he entered into the transaction with Middleton based upon Campagna's verification of Middleton's forthcoming

settlement and that, in the absence of Campagna's representation that he had verified the settlement's existence, Morimanno would not have sold his truck to Middleton. Campagna was Middleton's banker, and Morimanno reasonably could have believed that, by virtue of his position, Campagna either possessed reliable knowledge of Middleton's finances or had the ability to acquire such information. In any event, the record contains no evidence to suggest that Morimanno should have questioned the veracity of Campagna's statement.

Citing **Walker v. First State Bank**, 849 S.W.2d 337, 342 (Tenn. Ct. App. 1992), the Appellants suggest that Morimanno had an independent duty to investigate the existence of Middleton's settlement and that Morimanno's failure to conduct such an investigation precluded him from recovering in this case. We recognize that comparative negligence is a defense to a negligent misrepresentation action. **John Martin Co.**, 819 S.W.2d at 432. We know of no rule of law, however, that required Morimanno to conduct his own investigation instead of relying upon Campagna's statement that he had verified the settlement's existence. While Morimanno's failure to investigate might have been relevant to the issue of comparative negligence, such failure did not preclude him from recovering on his claim for negligent misrepresentation.

In our view, the Appellants' reliance upon the **Walker** decision is misplaced. The **Walker** case did not involve a bank's negligent communication of information concerning a bank customer; rather, it involved a bank's failure to disclose information about one of its customers. There, we held that the bank owed no duty to voluntarily disclose the information, and we observed that, despite having numerous opportunities to do so, the plaintiff failed to ask either the bank's officer or its attorney about any of the details of the plaintiff's transaction with the bank's customer. We also observed, however, that, if the plaintiff had made such inquiries, the bank's "officer or attorney would have been under a duty to respond fully, fairly and accurately." **Walker**, 849 S.W.2d at 342.

The trial court's judgment is affirmed, and this cause is remanded for further proceedings. Costs of this appeal are taxed to the Bank and Campagna, for which execution may issue if necessary.

_____

FARMER, J.

_____

CRAWFORD, P.J., W.S.

_____

HIGHERS, J.