**WARREN BROTHERS COMPANY,**
Appellant,

v.

**METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Tennessee, Appellee.**

Court of Appeals of Tennessee,
Western Section.

Feb. 6, 1976.

Certiorari Denied by Supreme Court
Aug. 30, 1976.

John J. Hollins, Jr., Nashville, for appellant.

William F. Howard, Nashville, for appellee.

NEARN, Judge.

This is a dispute over the terms of a contract.

Metro desired that certain improvements be made to a portion of Charlotte Avenue in Nashville. Under circumstances later set out, Warren Brothers agreed to do the work. A part of the work consisted of laying storm and sanitary sewers. Trenches had to be excavated in order to lay the storm and sanitary sewer lines. Rock had to be excavated in order to dig the trenches. Warren Brothers sought separate payment under the "rock excavation" provision of the contract. Metro refused payment claiming that the rock excavation provision was inapplicable when excavating for storm and sewer lines. It was the position of Metro that the bid price of Warren Brothers included work for all excavation of either rock or common dirt when excavating for sewer and storm lines, that the bid on the sewer items included what rock excavation was entailed in that work.

Suit was filed by Warren Brothers seeking the additional payment under the contract for rock excavation, as well as payment for the cost of some cast iron fittings.

The Chancellor awarded judgment against Metro for the cast iron fittings in the amount of $82,706.00. Metro makes no complaint about the judgment for the cast iron fittings and such forms no part of this appeal. However, the Chancellor refused to award judgment in favor of Warren Brothers for rock excavation and Warren Brothers appeals from that portion of the judgment. It is stipulated that the rock excavation dispute involved $119,754.30.

Warren Brothers has filed five Assignments of Error with this Court. They raise but two issues for determination. The first is: Was the Chancellor correct in holding that under the contract Warren Brothers was not entitled to rock excavation payment? The second issue is: If the Chancellor was correct in the first instance, did he err in failing to give Warren Brothers relief under the theory of *quantum meruit*?

The bid contract document in Item I, "Unclassified Excavation", under section 1.01 "Scope", states that the work to be performed "shall consist of clearing and grubbing, loosening, loading, removing and disposing, in the specified manner, of all wet and dry materials (including rock) which are necessary to be removed for construction purposes; —." Section "1.04 Rocks and Boulders" provides "(a) Rock shall be excavated over the horizontal limits of excavation and to a depth of not less than 6 inches below the bottom of pipe sewers—(b) Drilling and blasting operations shall be conducted with due regard for the safety of persons and property—." Section "1.06 Excavation for Trenches, Manholes and Structures" provides "(a) Common excavation for sewer lines shall consist of the excavation necessary for the construction of sewer and other pipe lines and all appurtenant facilities therefor,—".

Section "1.15 Measurement and Payment" provides "(a) Trench excavation, backfill, except crushed stone backfill, and bedding will be considered an integral part of the work of sanitary or storm sewers and no separate payment therefor will be allowed—".

In Item II headed rock excavation under section "2.01 Scope" the following is found:

"Rock excavation shall cover the removal of all rock materials as hereinafter defined which shall require removal from their original beds within the limits hereinafter defined, for the purpose of construction as shown on the plans or set forth in these specifications. It shall include all drilling, blasting and all other items incidental to such removal, and also the necessary disposal of excavated materials as specified for Item I, Common Excavation."

Section "2.05 Payment" provides "Payment for rock excavation performed under these specifications shall be made for the quantities determined in the manner specified above at the contract unit price per cubic yard as listed under Item II of the Contract Pay Items—".

Item II of the Contract Pay Items provided for payment of rock excavation at $30.00 per cubic yard.

By separate addendum to the contract, Warren Brothers also agreed to install street light bases at $178.34 each and pull boxes at $155.00 each. The addendum also explicitly provided that any rock excavation necessary in the installation of bases and boxes would be in compliance with "Item II, Rock Excavation and shall be paid for at the Contract Unit Price per cubic yard".

As to Item II rock excavation the addendum then provided:

"This Item shall pertain to rock removed for Street Light Bases, Pull Boxes, Retaining Walls and other Structure Excavation, but shall not pertain to the installation of Storm Sewers, Sanitary Sewers, Manholes, Inlets or Water Mains and their Appurtenances." (The emphasis is not supplied by the Court. The word "not" was underlined by typewriter in the original document.)

The Chancellor found the following to be the events and their sequence:

"1. During the year 1972 Metro advertised for contractors to bid on construction of certain improvements to be made for the widening and improving of Charlotte Avenue between Fourteenth Avenue North and Twenty-Fourth Avenue North in Nashville.

"2. Warren obtained from Metro copies of the proposals, contract documents, plans and specifications. Following receipt of the above documents Addendum No. 1 was mailed to Warren and received on January 5, 1973.

"3. Warren submitted a sealed bid on the forms provided by Metro and the bids were opened on January 11, 1973, and Warren was low bidder.

"4. By letter of January 12, 1973, Warren agreed to accept the provisions of Addendum No. 1 with the understanding that a contract supplement would be prepared.

"5. On March 8, 1973, the parties signed a contract, drawn and prepared by

Metro, covering the work to be done on the project.

"6. On March 12, 1973, contract supplement No. 1 was signed by the parties.

"7. On April 16, 1973, at a pre-construction conference the question arose as to whether rock excavation encountered in storm sewer construction would be paid for as a separate item.

"8. On April 17, 1973, Metro by letter notified Warren that "there shall be no extra payment for rock excavation encountered in the storm sewer construction."

The evidence does not preponderate against the Chancellor's findings.

■ It is the position of Warren Brothers that section "1.01 Scope" simply states in general terms the work to be done, and that Warren Brothers did perform that work. That section 1.04 specifically provides for rock excavation work; that section 1.06 specifically provides for common excavation work; and that the term "Trench Excavation" as used in section 1.15 governing payment applies only to common excavation work. Therefore, Warren Brothers argues, it is entitled to separate payment for the rock excavated in digging the trenches at $30.00 per cubic yard as provided in section 2.05 of the rock excavation item. Warren Brothers argues that if that is not what the contract provides, it certainly is not clear on the point and should be most strongly construed against the drafter, Metro, and in favor of Warren Brothers.

Warren Brothers further argues that Metro is "estopped to take the position that the addendum takes rock out as a pay item under the storm sewer provision of the contract."

The factual basis for the estoppel argument is that when Metro advised Warren Brothers that their bid was incomplete because there was no bid on the addendum, Metro also advised Warren Brothers to the effect that if it had a good contract without the addendum, it would have a better contract with the addendum. Based upon the representation that the addendum did not

adversely affect the original bid, Warren Brothers agreed to do the bases and boxes work for $11,367.08 and did not bother to read the terms of the written addendum before signing same.

Metro argues that there is no ambiguity in the contract document and that it "clearly" provides that Warren Brothers is to remove "all wet and dry materials (including rock)". Further, if rock is encountered in trenching for the water and sewer lines, it is to be removed in compliance with subsections (a) and (b) of section 1.04 because section 1.06 defines common excavation for sewer lines as that "excavation necessary for the construction of sewer and other pipe lines" and describes such necessary excavation as "Excavation for Trenches". Therefore, where subsection (a) of section 1.15, governing measure of payment, provides, "Trench excavation—will be considered an integral part of the sanitary or storm sewer and no separate payment therefor will be allowed", it means just that.

Metro further argues that if there were any ambiguity in the contract regarding the payment for the excavation of rock encountered in trenching, all doubt must vanish when the addendum is read.

Proof was adduced by Metro to the effect that Item II, rock excavation, was placed in the bid information because the bid conditions provided that the accepted bidder also agreed to perform reasonable additions or changes ordered by Metro and that any such additions or changes would be covered by Item II, which provided for payment at the contract unit price.

We deem it unnecessary to decide whether the initial bid contract document was ambiguous prior to the incorporation of the addendum. We agree with counsel for appellee and hold that if any ambiguity did exist, it was eliminated by the addendum. We further hold that appellee is not estopped to rely upon the addendum.

In effect, the addendum states that the two added items (bases and boxes) will be the only items of excavation under the contract Item II, rock excavation, to which the Contract Unit Price of $30.00 per cubic yard

will apply. The addendum was accepted and signed by Warren Brothers before any work was performed.

The initial bid of Warren Brothers was unacceptable because the bid was incomplete. It did not contain a bid for the bases and boxes although separate notices had been sent by Metro to prospective bidders that the bases and boxes would be part of the contract. Rather than reject the bid of Warren Brothers, Metro gave Warren Brothers the opportunity to make a bid on the omitted work. Warren Brothers claimed that it did not have or had not received a copy of the notice to prospective bidders which set out the additional work to be included in the bid. Metro sent by messenger another copy of the notice to Warren Brothers in order that Warren Brothers could complete its bid. This notice of additional work contained the same language that was finally contained in the addendum to the contract which was executed by Warren Brothers as Contract Supplement No. 1. It provided that Item II, rock excavation, applied to the additional work, "but shall not pertain to the installation of Storm Sewers, Sanitary Sewers, Manholes, Inlets or Water Mains and their Appurtenances." Warren Brothers claimed that it did not read the details of the notice but rather relied upon the statement of Metro that if Warren Brothers had a good initial contract, it would have a better one with the addendum. Warren Brothers submitted a bid in the amount of $11,367.08 for the additional work and it was agreed that the additional work agreement would be later reduced to writing. This was done and the written agreement on the additional work, Contract Supplement No. 1, contained the same verbiage as the notice. However, Warren Brothers admits that it did not read the agreement but relied upon the representations of Metro.

Estoppel is based on reliance upon the statement of another without having the opportunity to know the truth and action based on that reliance which results in detriment to the actor. *Allen v. Neal* (1965) 217 Tenn. 181, 396 S.W.2d 344; *Freeman v. Martin Robowash, Inc.* (1970 W.S.) 61 Tenn. App. 677, 457 S.W.2d 606. Warren Brothers had every opportunity to know the true intendment of the contract for it was expressed both in the addendum notice and the signed contract supplement. Yet, Warren Brothers admittedly failed to exercise rudimentary business practice by failing to read the written terms of the addendum bid, which terms were given to it before the bid was made, and by failing to read the contract supplement which was given to Warren Brothers for signature and return. Warren Brothers had every opportunity to know the truth but failed to exercise those opportunities. The doctrine of estoppel is not available to Warren Brothers. See *Hankins v. Waddell* (1943 E.S.) 26 Tenn. App. 71, 167 S.W.2d 694, for a similar holding under analogous circumstances.

We find without merit the Assignment of Error addressed to the Chancellor's failure to grant relief under the theory of *quantum meruit.* The pleadings do not raise any claim based on *quantum meruit* and neither does the proof. The first mention of such right to recovery is found in the motion for a new trial. Fairness requires that if such claim or theory of recovery is to be made, the defendant should have notice thereof in order that it might be prepared to present proof on the issue. See *Connecticut Indemnity Co. v. DeGalleford* (1971) 225 Tenn. 406, 470 S.W.2d 5. In addition, if the Chancellor was required to grant a recover based on *quantum meruit* he was also required to have proof presented upon which he could base such recovery. There is no proof in this record of the cost of the plaintiff in trenching for the lines. There is no proof in this record of whether plaintiff lost money or made a profit on the job. In short, there is only the contract unit price shown in the proof. A recovery on the theory of *quantum meruit* is not based on the contract price, but is based on the actual value of the services rendered. *Bauman v. Smith, et al.* (1972 Tenn.App., W.S.) 499 S.W.2d 935.

All Assignments of Error are overruled and the decree below is affirmed with costs

of appeal adjudged against appellant and surety.

CARNEY, P. J., and MATHERNE, J., concur.