FIRST AMERICAN NATIONAL BANK, )   KNOX CHANCERY
                                 )
     Plaintiff/Appellee        )   NO.  03A01-9704-CH-00131
                                 )
v.                             )
                               )   HON.  FREDERICK D. McDONALD
JAMES FITZGERALD and     )   CHANCELLOR
ERIC M. GEORGESON,       )
                               )
     Defendants/Appellants   )
                               )   AFFIRMED

Neal S. Melnick and Lawrence E. Ault, Knoxville, for Appellants.
Cheryl E. Light, Knoxville, for Appellee.

## O P I N I O N

INMAN, Senior Judge

This is a suit on a promissory note executed on January 18, 1994 by the defendant James Fitzgerald to the plaintiff.  The payment of this note was guaranteed by the defendant Eric M. Georgeson, who executed a separate document.  Each document appears to be facially regular and routine.

The defendants filed a joint answer asserting a failure of consideration in that the proceeds of the note were never received by either of them.  They admitted the execution and delivery of the promissory note, but denied the execution and delivery of the guaranty, while later admitting its execution and delivery.

The Chancellor sustained the complaint in all respects and entered a judgment against both defendants in accordance with the provisions of the promissory note.  The defendants appeal and present for review the following issues:

    I.      Whether the trial court erred in finding that authorized advances
           were made on the subject promissory note.

    II.     Whether the trial court erred by admitting parol evidence to vary
           the terms of the promissory note and obligations of the parties
           where the appellee failed to establish any authorized advances
           to the appellants under the note.

III.  Whether the trial court erred in failing to apply the statute of frauds in finding the appellants liable for money advances to a third party, Blakley Management Corporation, when no written promise to do so exists.

IV.  Whether the trial court erred in not barring recovery on the basis that the appellee was equitably estopped by its conduct and negligence.

Our review of findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. TENN. R. APP. P., RULE 13(d).

I

In 1989, James Fitzgerald and Eric Georgeson were business partners. The partnership owned several properties in Chattanooga and Knoxville including property commonly known as the Blakley Hotel. On December 3, 1989, they entered into a Management Agreement with Blakley Management Corporation to manage and oversee the operation of the Blakley Hotel including all of its food and beverage operations.

The Management Agreement provided that Joseph Parisi (hereinafter "Parisi"), as major shareholder of Blakley Management Corporation, would be responsible for hiring staff, maintaining rooms and accurate records, paying taxes, collecting revenues, paying expenses and maintaining the physical condition of the hotel. Parisi would receive a 20 percent interest in the profits for his management services. Blakley Management Corporation would base its operation at the Blakley Hotel and pay rental for the space. Fifty percent of net profits of Blakley Management Corporation would be paid to the partnership of Georgeson and Fitzgerald.

In January, 1990, Parisi approached Dewitt Ingram, (hereinafter "Ingram") a loan officer at FANB, requesting a $25,000. loan. Parisi had no credit history nor assets sufficient to secure the loan. Subsequently, Georgeson and Fitzgerald discussed the loan with Ingram and the need for funds to equip and operate the Blakley Hotel.

Ingram had known Georgeson and Fitzgerald for some years, and they had prior business dealings. Fitzgerald is currently head of the Real Estate Finance

2

Department for Credit Lyonnaise, a New York bank, and has worked in banking for 20 years including international finance and investments. Fitzgerald first came to Knoxville when he worked for the Federal Savings and Loan Insurance Corporation (FSLIC). Financial statements were required for the loan approval, and those statements were submitted to Ingram by both Fitzgerald and Georgeson.

The $25,000. loan was made to Fitzgerald on January 18, 1990. Payment of it was guaranteed by Georgeson. The purpose of the loan was the purchase of equipment and supplies. Fitzgerald later talked with Ingram by phone requesting that draws be made on the loan. A phone message from Fitzgerald for Ingram was taken by Darlene White, a commercial loan secretary, and this message reflected a request from Fitzgerald to advance $17,000. to the Blakley Management Corporation account.

FANB records reflect that the loan proceeds were advanced as follows: $17,000. was deposited on January 24, 1990 to the Blakley Management Corporation account; a cashier's check in the amount of $2,393. was issued to Watkins Motor Lines per instructions on February 5, 1990; and the balance of $5,156.74 was deposited to the Blakley Management Corporation account on February 5, 1990. The Corporate Resolution on file at FANB for the Blakley Management Corporation also dated January 24, 1990 authorized the establishment of a checking account with Fitzgerald and Parisi as allowed signers. Accordingly, the signature card dated the same date had two signatures, those of Fitzgerald and Parisi.

Interest payments were made on the note by Blakley Management Corporation, but Ingram contacted Fitzgerald and Georgeson to advise them if payments were not made timely. When interest payments ceased, Ingram discussed with the Appellants the possibility of FANB collateralizing the loan or working out the loan in some other way. The loan remained in default and past due, resulting in a formal demand letter being sent to Fitzgerald from Ingram on February 10, 1992.

3

## II

All contracts in writing and signed by the party to be bound are prima facie evidence of consideration, TENN. CODE ANN. § 47-50-103, and the burden of overcoming the presumption of consideration is upon the Appellants. *Atkins v. Kirkpatrick,* 82 S.W.2d 547, 552 (Tenn. App. 1991), citing *Pinney v. Tarpley,* 686 S.W.2d 574 (Tenn. App. 1984). The Appellants claim advances were not authorized and deny that they received any consideration because funds were advanced directly to suppliers for the Blakley Hotel or to the account of Blakley Management Corporation.

The Chancellor found:

> The evidence is very clear that the money that was being borrowed was to go to Mr. Parisi and his company and that, in fact, it did go there. There is evidence tending to show that Mr. Fitzgerald had some part in some of the advances, but that really is not a matter making much difference here inasmuch as the loan moneys went where they were intended and were used as intended in Mr. Parisi's business.

The Appellants' argument focuses on the way advances were made and who requested advances, with little or no attention to the evidence concerning the purpose and need for the promissory note and guaranty. What was contemplated and intended by the parties respecting the use of the proceeds when they entered into the contract is relevant to the question of whether the Appellants received the consideration they now deny.

The Chancellor found that the method of advancing money was not determinative of whether consideration was given. Consideration is defined as "either a benefit to the party promising or a prejudice or trouble to the party to whom the promise is made." *Dixon v. Manier,* 545 S.W.2d 948, 950 (Tenn. App. 1976), citing *Johnson v. Central National Insurance Co.,* 356 S.W.2d 277 (Tenn. App. 1976). Consideration may pass to a third party and consist of detriment to the payee for the benefit to a third party. *Third National Bank in Nashville v. Lyons,* No. 01A01-9210-CH-00387, 1993 Tenn. App. LEXIS 192, (Middle Section, March 17, 1993). It is not necessary that all or any of the consideration of a note pass directly to the maker.

4

In *Walker v. First State Bank,* 849 S.W.2d 337, 342 (Tenn. App. 1992), citing *Palmer v. Dehn,* 198 S.W.2d 827, 828 (Tenn. App. 1946), this Court held and reiterated the following principle:

> For there to be a consideration in a contract between parties to the contract it is not necessary that something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration."

The plaintiff in *Walker* contended that there was an absence or lack of consideration for her note and trust deed, but she testified that she realized that the pledging of her interest in farm property was necessary as additional collateral to secure the debt of her brother. The Court found the additional collateral was a benefit to the bank, and an extension of time to pay the debt through renewal notes constituted sufficient consideration to the plaintiff. The benefit to the plaintiff was the extension of time given to her brother to pay the debt.

The consideration to the Appellants in the present case is even more direct. Appellants Fitzgerald and Georgeson were the owners of the Blakley Hotel in Knoxville. As owners of this property, they contracted with the Blakley Management Corporation and its major stockholder, Joe Parisi, to manage and oversee the operation of the property as a hotel including its food and beverage operations. Parisi was responsible for hiring staff, paying expenses and maintaining the physical condition of the hotel owned by the Appellants. Fifty percent of net profits of Blakley Management Corporation were to be paid to the Appellants. Blakley Management Corporation operated the Blakley Hotel property as an ongoing business concern for approximately two years.

In his testimony about the loan, Fitzgerald testified:

Q:   You were aware from your conversations with Mr. Ingram that Joe Parisi didn't have the credit to get this loan, weren't you?

A:   He told me that Mr. Parisi on his own would not be able to secure this loan, correct.

Q:   Did you have conversations with Dewitt Ingram about this loan and about the situation and how funds could be attained to operate the hotel and restaurant?

A:   We only had a very short conversation. I had other business dealings with him, as I've already testified, at Third National Bank. He specifically asked me if Rick Georgeson and myself would co-sign for a

5

$25,000. loan for Joe Parisi. We didn't talk about what it would be used for. I said, Yes.

Q:      You did not talk about what it was going to be used for?

A:      No, I simply assumed --I trusted Joe Parisi. I assumed it would go into Blakley Management Corp.

Q:      And it did, didn't it?

A:      I couldn't testify to that. I have no knowledge of that.

Q:      Well, if you heard testimony today that deposits were made into the Blakley Management Corporation account, that's what you understood would be done with the money; is that correct?

A:      Correct.

Ingram, the loan officer, testified regarding the purpose of the loan and

how it was to be advanced:

Q:      What were your discussions with either Mr. Fitzgerald or Mr. Georgeson regarding what was to be done with the proceeds of this loan?

A:      It was a $25,000. loan, and it was to be there. And when they called me, it was to be made a draw on or Joey could draw on it too. I think there was an emergency for this. They had some bakery items coming on a truck or something. I don't remember strictly, but it was some kind of -- something coming in by a trucking company, and they did not have the money to pay for it, and they had to pay for some type of equipment.

Q:      Did Jim Fitzgerald ever tell you that Joe Parisi was authorized to make draws on this note?

A:      They understood that this money was to be used, and Joey had the discretion to draw on it and put it in -- I don't know what account it was deposited in. It was some restaurant or the Blakley House Restaurant. I don't have that in front of me.

Q:      Did you ever talk to Jim Fitzgerald by phone after this loan was made about advances under the loan, under the note?

A:      My secretary did, and I did too. There were several different draw requests made, and I got phone calls from Jim to advance money.

Ingram also testified regarding his course of dealings with the Appellants

when payments were to be made:

Q:      Okay. Do you know who made the interest payments on this note?

A:      I know that several times I had to call Joe, and he couldn't make them. And finally it got down to the end, and I called Jim and talked to him, and they offered me collateral from the hotel and different things to try to work the loan out.

6

> I'm sure--I don't have those checks in front of me, but I'm sure I talked to Rick and Joe several times about the interest payments. And I don't have the checks in front of me, and it's hard for me to answer. But I talked to them several times on the loan, and they helped me either get it paid or seen that it was paid.

Q: So if interest payments weren't made, did you contact Rick Georgeson and Jim Fitzgerald?

A: I definitely contacted Jim and Rick both. I called Jim several times before I left the bank, at the end, about these, and they told me what they would do to work it out, give me collateral and stuff.

There was additional testimony from Darlene White, secretary to Ingram, who recalled taking a phone message from Appellant Fitzgerald who asked that $17,000. be advanced to the checking account for Blakley Management Corporation. This phone message was part of the Bank's business record.

The finding of the Chancellor that advances were authorized is fully supported by the preponderance of the evidence.

### III

Turning to the issue of whether the Chancellor erred in admitting parol evidence respecting the intended use of the borrowed funds and the nature of the consideration, it is well established in this jurisdiction that while parol evidence is not admissible to contradict a written instrument, nevertheless parol evidence is admissible as to collateral matters not varying the terms of the writing . . . or when representations and statements are made as inducements to the contract, and form the basis or consideration of it. *Hines v. Wilcox,* 33 S.W. 914 (Tenn. 1896).

Appellants argue that "terms" were added which were not in the note, including that no purpose is given for the note, advancements were not addressed and Fitzgerald gave no written authority to anyone to request draws. These items or questions were not specifically mentioned in the note. The Rule allows the admission of parol evidence in this circumstance, since the matters addressed are not inconsistent with the written document. *See, McGannon v. Farrell,* 214 S.W. 432, 434 (Tenn. 1919).

7

As to this, the Chancellor found:

> The terms of the note and continuing guaranty cannot be varied by oral testimony as to that some other understanding or agreement at the time of execution of the document might have been. The law is extremely clear on that point and leaves us, so that we must really disregard contentions about who else was supposed to sign the note, or who else was supposed to be obligated on it.

We agree with this finding.

The Appellant Fitzgerald is a New York banker currently serving as head of Real Estate for Credit Lyonnaise with 20 years of experience in the banking industry including international finance and investments. He is a graduate of St. John's University and came to Knoxville to liquidate various properties for the FSLIC. He then purchased several properties in the Knoxville area and went into business with Appellant Georgeson. He now asserts that the note he signed did not contain the provisions he negotiated and agreed to including the fact that there were to be other makers. While he admits the execution of the note for $25,000. his argument that he did not follow-up with the Bank about the proceeds of the note and that he knew nothing of the advances under the note is unavailing.

The Chancellor found ample evidence that the understanding of the parties with regard to these documents was not inconsistent with the written terms and that the contemplated and acknowledged consideration was given. We agree with this finding. The Chancellor did not vary the terms of the documents.

## IV

There is no evidence that the plaintiff loaned money to anyone other than Appellant Fitzgerald, and the fact that he directed those funds be utilized for the operation of the Blakley Hotel through its manager does not change his obligation. Consideration can flow to a third party if that is what the obligor directs it to do. *Walker, supra.*

The Statute of Frauds has no application. The Chancellor found:

> Mr. Fitzgerald contends that Mr. Parisi was supposed to be a co-signor on the note and that Mr. Fitzgerald would not have signed had he known that Mr. Parisi was not signing. Essentially that defense requires a disregard of the note itself, the note that shows the name typed in of Mr. Fitzgerald and below that is his signature. Below that further is the typed indication that Defendant Georgeson guarantees the note.

8

There is no indication on either the note or continuing guaranty that Mr. Parisi or his corporation were in any way directly obligated on the note.

We agree with this finding.

**V**

Lastly, the appellants argue that the Chancellor should have applied the doctrine of equitable estoppel to bar the plaintiff's recovery because the Bank allegedly did not honor its promise to advance the proceeds to him and thereby prejudiced him, as he relied on that promise in the signing of the promissory note.

Estoppels are not favored, and the burden is upon the party seeking to invoke the estoppel to prove each and every element thereof. *Third National Bank v. Capital Records,* 445 S.W.2d 476 (Tenn. App. 1969). Estoppel requires, at a minimum: (1) reliance upon the statement or action of another without the opportunity to know the truth, and (2) action based on that reliance which results in detriment to the actor. *W. F. Holt Co. v. A & E Electric Co., Inc.,* 665 S.W.2d 722, 735 (Tenn. App. 1983), citing *Warren Brothers Co. v. Metropolitan Government,* 540 S.W.2d 243, 247 (Tenn. App. 1976). For equitable estoppel, the party must have taken actions "calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert." *Id.,* citing *McClure v. Wade,* 235 S.W.2d 835, 842 (Tenn. App. 1950).

As found by the Chancellor, and as heretofore noted, the loan at issue was made to Fitzgerald. The testimony was clear that the Bank and Fitzgerald intended the proceeds to be utilized for the operation of the Blakley Hotel. Equitable estoppel is not available as a defense to the Appellants when there have been no subsequent inconsistent assertions made by the Bank. The evidence is clear that the Bank honored its obligation and representations to Fitzgerald by making the advances he bargained for when he obtained the loan.

We agree with the Chancellor that the evidence reveals no reason why the plaintiff should be equitably estopped from enforcing the promissory note.

The judgment is affirmed and the case is remanded for all appropriate purposes. Costs are assessed to the appellants and their sureties for which execution may issue if necessary.

_____
William H. Inman, Senior Judge

CONCUR:

_____
Herschel P. Franks, Judge


_____
Don T. McMurray, Judge