IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2018 Session[1]

## VICTOR COLE v. JOE CARUSO

**Appeal from the Circuit Court for Shelby County**
**No. CT-005702-11  Gina C. Higgins, Judge**

_____

### No. W2017-00487-COA-R3-CV
_____

In this unjust enrichment claim, Plaintiff/Appellee Victor Cole filed a lawsuit alleging, inter alia, a claim for unjust enrichment against Defendant/Appellant Joe Caruso.  A jury determined that Mr. Cole had been unjustly enriched.  Upon our review, we conclude that Mr. Cole failed to provide any evidence that Mr. Caruso was unjustly enriched, thereby failing to establish a prima facie claim.  Because Mr. Cole failed to provide any evidence regarding one of the elements of unjust enrichment, the trial court erred in denying Mr. Caruso's motion for directed verdict.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and BRANDON O. GIBSON, JJ., joined.

Robert L. Moore, Memphis, Tennessee, for the appellant, Joe Caruso.

Charles W. Weirich, Jr., Memphis, Tennessee, for the appellee, Victor Cole.

## OPINION

### FACTS

This case began with allegations that the parties participated in a secret partnership agreement; the facts are highly disputed.  Plaintiff/Appellee Victor Cole and Defendant/Appellant Joe Caruso both played professional baseball and would train

_____

[1] Oral argument in this case was conducted at Union University.

together at a sports academy near Memphis, Tennessee. In 2009, Mr. Caruso allegedly approached Mr. Cole about becoming potential business partners to "recruit, train, and coach youth baseball players with aspirations of playing professionally or in college." Mr. Cole and Mr. Caruso had a meeting in the fall of 2010 at Mr. Cole's home, in which they discussed the alleged partnership agreement. Other than the two parties to this appeal, only Mr. Cole's wife and son were present. During this meeting, Mr. Cole claimed that he and Mr. Caruso initially discussed a 50/50 split of the profits; however, the two ultimately agreed on a 60/40 split with Mr. Caruso receiving 60% of the profits and Mr. Cole receiving 40%. Mr. Caruso disputed that he and Mr. Cole ever had a meeting to discuss a potential partnership and maintained that there was never a partnership between he and Mr. Cole.

After the alleged partnership was made, it is undisputed that Mr. Caruso and Mr. Cole both worked together for a time in the East Coast Grays baseball organization.[2] In the fall of 2011, however, Mr. Caruso informed Mr. Cole that Mr. Cole was not meeting the expectations of the organization and was no longer needed. The two then parted ways. Up to this point, Mr. Cole had received compensation in the amount of approximately $13,000.00. He cashed the checks with no complaint.

On December 22, 2011, Mr. Cole filed his complaint against Mr. Caruso for "damages, injunction, and accounting for breach of partnership agreement, conversion, promissory fraud and/or unjust enrichment[,]" in the Shelby County Circuit Court ("trial court"). Mr. Caruso filed an answer on January 13, 2012, denying all the material allegations set forth in Mr. Cole's complaint. Following a period of discovery, the case was eventually heard by a jury for four days beginning on April 25, 2016. At trial, Mr. Cole offered testimony from three people: (1) himself; (2) Dr. Ralph Scott, an expert witness; and (3) Mrs. Sherri Cole, Mr. Cole's wife.

At trial, Mr. Cole testified that he coached and served as a recruiting director for the organization, and that during his tenure, from 2010-2011, the organization grew from one team to three teams. He also testified that during the early days of the East Coast Grays, he and Mr. Caruso met regularly to discuss tournaments, camps, clinics, uniforms, other coaches to hire, player development, and player placement. Mr. Cole further stated that during his time with the East Coast Grays, he and Mr. Caruso traveled across the Southeast, often using his automobile for the trips and that he turned down other income opportunities to work with Mr. Caruso and the East Coast Grays organization. In sum, Mr. Cole generally testified as to the services and contributions he provided for the East Coast Grays and its players, his alleged partnership with Mr. Caruso, and his alleged

---

[2] The East Coast Grays was a for-profit organization consisting of multiple baseball teams made up of elite players from the Southeast. The organization's goal was to "recruit, train, and coach youth baseball players with aspirations of playing professionally or in college." The organization appears to have been affiliated with an out-of-state organization; any dispute concerning the origination and ownership of the East Coast Grays is not relevant to this appeal.

partnership interest in the East Coast Grays. Dr. Scott testified solely as to the monetary value of Mr. Cole's partnership interest. Mrs. Cole testified mostly to the facts surrounding the meeting in which Mr. Caruso and Mr. Cole established the alleged partnership. At the closing of Mr. Cole's proof, Mr. Caruso moved for a directed verdict. The trial court granted the directed verdict regarding the claims of conversion, attorney fees, punitive damages, and promissory fraud; however, the trial court denied the motion for breach of a partnership agreement and unjust enrichment.

On April 28, 2016, the jury returned a unanimous verdict specifically finding that the parties did not have a partnership, and thus Mr. Cole had not suffered damages as a result of a breach of partnership agreement. On the alternative ground of unjust enrichment, the jury did find that Mr. Caruso had "received the benefits of [Mr. Cole's] services under circumstances rendering it inequitable to keep those benefits without compensating [Mr. Cole.]" Therefore, the jury found that Mr. Caruso was unjustly enriched by Mr. Cole's services and awarded Mr. Cole $10,000.00. Judgment on the jury verdict was entered on May 16, 2016.

On May 20, 2016, Mr. Cole filed a motion for pre-judgment interest and on June 7, 2016, also filed a motion for additur or, in the alternative, a motion for new trial, arguing that the $10,000.00 jury verdict was not reasonable in light of his contributions to the organization; Mr. Cole requested an additur of $90,000.00. On June 14, 2016, Mr. Caruso filed a motion for judgment notwithstanding the verdict, for remittitur, or alternatively to alter or amend the judgement. On December 5, 2016, the trial court entered an order granting Mr. Cole's motion for additur in the amount of $40,000.00 thereby increasing Mr. Cole's award to $50,000.00. The trial court subsequently (1) denied Mr. Cole's motion for prejudgment interest; (2) denied Mr. Caruso's motion for judgment notwithstanding the verdict, remittitur, or in the alternative to alter or amend; and (3) granted Mr. Cole's motion for discretionary costs. From this judgment, Mr. Caruso timely appeals.

## ISSUES

Mr. Caruso presents two issues on appeal, which we have reworded:

(1) Whether the trial court erred in failing to grant Mr. Caruso's directed verdict because Mr. Cole did not establish a prima facie case on the theory of unjust enrichment.
(2) Whether the trial court erred by suggesting a $40,000.00 additur.

## ANALYSIS

This case stems from the trial court's denial of a directed verdict on an unjust enrichment claim. *Brown v. Christian Brothers University*, 428 S.W.3d 38, 49–50

(Tenn. Ct. App. 2013), succinctly sets the standard when reviewing a motion for directed verdict:

A motion for a directed verdict provides a vehicle for deciding questions of law; the question presented is whether the plaintiff has presented sufficient evidence to create an issue of fact for the jury to decide. ***Burton v. Warren Farmers Co-op.***, 129 S.W.3d 513 (Tenn. Ct. App. 2002). Appellate courts must conduct a *de novo* review of a trial court's ruling on a motion for a directed verdict, applying the same standards that govern the trial court's determination. ***Brown v. Crown Equip. Corp.***, 181 S.W.3d 268, 281 (Tenn. 2005) (citing ***Gaston v. Tenn. Farmers Mut. Ins. Co.***, 120 S.W.3d 815, 819 (Tenn. 2003)). A directed verdict cannot be based upon speculation, conjecture, guesswork, or a mere spark or glimmer of evidence. ***Bandeian v. Wagner***, 970 S.W.2d 460 (Tenn. Ct. App. 1997). A directed verdict is appropriate only when evidence, viewed reasonably, supports only one conclusion. ***Remco Equipment Sales, Inc. v. Manz***, 952 S.W.2d 437 (Tenn. Ct. App. 1997); ***Pettus v. Hurst***, 882 S.W.2d 783 (Tenn. Ct. App. 1993). If "reasonable minds could . . . differ as to the conclusions to be drawn from the evidence," the motion must be denied. ***Eaton v. McLain***, 891 S.W.2d 587, 590 (Tenn. 1994). Motions for a directed verdict require more certainty and proof than do motions for an involuntary dismissal. ***Smith v. Inman Realty Co.***, 846 S.W.2d 819 (Tenn. Ct. App. 1992). In reviewing a motion for a directed verdict, courts must take the strongest legitimate view of the evidence against the directed verdict and must deny the motion in any case where all reasonable persons would not reach the same conclusion. ***Smith v. Inman Realty Co.***, 846 S.W.2d 819 (Tenn. Ct. App. 1992); ***Brown***, 181 S.W.3d at 281; ***Gaston***, 120 S.W.3d at 819. Only if there is no material evidence in the record that would support a verdict for the plaintiff under any of the plaintiff's theories, may the trial court's action in directing a verdict be sustained. ***Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n***, 807 S.W.2d 559 (Tenn. Ct. App. 1990). Accordingly:

To avoid a directed verdict under Tenn. R. Civ. P. 50, the nonmoving party must present some evidence on every element of its case—enough evidence to establish at least a prima facie case. *See **Harrogate Corp. v. Systems Sales Corp.***, 915 S.W.2d 812, 818 (Tenn. Ct. App. 1995). Normally, a directed verdict is proper only where no material evidence exists on one or more elements that the non-moving party must prove. *See generally **Conatser v. Clarksville Coca-Cola Bottling Co.***, 920 S.W.2d 646, 647 (Tenn. 1995). Whether the trial court should have directed a verdict presents [the appellate court] with the legal

- 4 -

question of whether material evidence was introduced on every element sufficient to create a jury issue.

*Brown v*, 428 S.W.3d at 49−50 (quoting *Richardson v. Miller,* 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000)).

As a preliminary matter, we note that in the trial court, the jury found that there was not a partnership between Mr. Cole and Mr. Caruso. The jury awarded damages solely on Mr. Cole's claim of unjust enrichment. Neither party has appealed the jury's decision regarding the issue of whether a partnership existed; therefore, for the purposes of this appeal, we must conclude that Mr. Cole was not a partner, nor was he entitled to any damages representing his partnership interest in the East Coast Grays. Rather, the dispositive question in this case is whether Mr. Cole submitted sufficient proof of his claim for unjust enrichment, and if so, the appropriate damages resulting from that claim.

"Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) (citing *Paschall's Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150, 154–55 (Tenn. 1966)). The theory of unjust enrichment is based on the principle that "a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit." *Freeman Indus., LLC. V. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citing *Paschall's Inc.*, 407 S.W.2d at 154). Accordingly, to establish an unjust enrichment claim, one must prove: "1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Freeman Indus.*, 172 S.W.3d at 525 (quoting *Paschall's Inc.*, 407 S.W.2d at 155). An unjust enrichment case "must be examined in light of its factual situation and decided according to the essential elements of unjust enrichment." *Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 WL 336376, at *19 (Tenn. Ct. App. Jan. 26, 2015) (citing *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995)). The Tennessee Supreme Court has noted that the most significant requirement in a claim for unjust enrichment is that the enrichment to the defendant be unjust. *See Freeman Indus., LLC.*, 172 S.W.3d at 525; *Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596; *Paschall's Inc.,* 407 S.W.2d at 155.

We recognize that the facts of this case appear to implicate the theory of quantum meruit. Quantum meruit actions generally "enable parties who have provided goods and services to another to recover the reasonable value of these goods and services." *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995). To establish a claim for quantum meruit, one must prove that:

(1) there must be no existing, enforceable contract between the parties covering the same subject matter

(2) the party seeking recovery must prove that it provided valuable goods and services,

(3) the party to be charged must have received the goods and services,

(4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated,

(5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

*Id.* (internal citations omitted). Our supreme court has generally held that "[a]ctions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same." ***Paschall's***, ***Inc.,*** 407 S.W.2d at 154. As noted above, however, the Tennessee Supreme Court has outlined separate and distinct elements applicable to each claim. *Compare* ***Castelli***, 910 S.W.2d at 427 (outlining the five elements needed to establish a quantum meruit claim), *with* ***Freeman Indus., LLC.***, 172 S.W.3d at 525 (outlining three elements needed to establish an unjust enrichment claim). Although there is much "confusion between these two concepts[,]" a quantum meruit theory was never put forth by either party during any stage of litigation. Instead, Mr. Cole's complaint alleged only the theory of unjust enrichment and Mr. Caruso has never argued that the proper claim in this case is for quantum meruit. Consequently, we will proceed in discussing only the parties' arguments regarding unjust enrichment. *See* ***Patterson***, 2017 WL 1433310, at *9 n.9 (holding that where no party argued that the wrong claim was raised by the complaint, the court would not consider "whether the appropriate claim was brought in this case").

There is no dispute in this case that Mr. Cole conferred a benefit on Mr. Caruso that was appreciated by Mr. Caruso. A benefit in this context is generally defined as "any form of advantage that has a measurable value including the advantage of being saved from an expense or loss." ***Freeman Indus., LLC.***, 172 S.W.3d at 525. Here, it was undisputed that Mr. Cole was the pitching coach and recruited for the organization. Additionally, it is undisputed the Mr. Cole attended meetings, drove players to games, helped design uniforms, and spent a significant amount of time involved in the organization. The evidence shows that Mr. Caruso was aware of Ms. Cole's work for the organization; indeed, as discussed in detail *infra*, Mr. Cole was compensated for some

- 6 -

work done for the East Coast Grays. As such, the first two elements necessary to establish an unjust enrichment claim have clearly been met in this case.

The dispute in this case concerns whether proof was presented to support the final element: that it is inequitable to allow Mr. Caruso to retain the benefit without payment of the value thereof. Although the parties generally frame this issue in their briefs as a failure to present proof of the value of the benefit conferred, a closer inspection of the parties' arguments reveals that this issue must be resolved on the basis of whether Mr. Cole presented any material evidence as to the whether the enrichment to Mr. Caruso was unjust. As we have previously noted, it is not simply the "enrichment of the defendant [that is dispositive], but the *unjust* enrichment of the defendant at the expense of the plaintiff" that is required to establish an unjust enrichment claim. *Reprise Capital Corp. v. Rogers Group Inc.*, 802 S.W.2d 608, 610 (Tenn. Ct. App. 1990) (emphasis in original). Moreover, as mentioned above, we must place significant weight on this requirement for recovery. *See Freeman Indus., LLC.*, 172 S.W.3d at 525 ("The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust."); *see also Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596; *Paschall's Inc.,* 407 S.W.2d at 155. Thus, this Court must determine whether Mr. Caruso's enrichment was actually unjust under the circumstances.

In this case, it is undisputed that Mr. Cole was compensated approximately $13,000 from the end of 2010 to October 2011, and we must conclude that Mr. Cole was not a partner, as explained *supra*. Implicit in the unjust enrichment elements is that the plaintiff has conferred a benefit upon the defendant for which he has not been compensated. *See Freeman Indus.*, 172 S.W.3d at 525 (quoting *Paschall's Inc.*, 407 S.W.2d at 155) (holding that the inequity occurs when there is benefit without compensation). The fact that Mr. Cole was in fact compensated for at least a portion of the work he performed in this case therefore complicates his task in establishing that he conferred some benefit for which he deserves additional compensation. Although not exactly on point, in transactions involving real estate, we have previously held where there is evidence that any person provided any consideration for any improvement, a claim for unjust enrichment cannot stand. *See Patterson v. Patterson*, No. M2016-00886-COA-R3-CV, 2017 WL 1433310, at *11 (Tenn. Ct. App. Apr. 20, 2017); *see also Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 756 (Tenn. Ct. App. 2006) ("This principle is commonly applied to unjust enrichment claims based upon improvements to real estate."); *Paschall's, Inc.*, 407 S.W.2d at 155 ("[I]f the landowner has given any consideration to any person for the improvements, it would not be unjust for him to retain the benefit without paying the furnisher."); *Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 597 (holding that it was "not unjust for defendants in this case to retain th[e] property with its improvements" because "the defendants have provided consideration[.]"). This Court has, on at least one occasion, extended this principle to include unjust enrichment claims that do not involve real estate. *See Bennett*, 198 S.W.3d at 756–57. In *Bennett,* this Court determined that third party defendants were

not unjustly enriched by the indirect benefits provided by plaintiffs because there was evidence of consideration for plaintiffs' services. *See* **Bennett**, 198 S.W.3d at 756-57 ("[T]he defendants [were] not unjustly enriched . . . because the Complaint acknowledges that defendants have paid consideration to the merchants for any benefits received indirectly from the plaintiffs."). Mr. Caruso has not argued in this case that the payment of some consideration to Mr. Cole totally defeats his claim for unjust enrichment; as such, we decline to hold broadly that *any* consideration prevents a plaintiff from recovering under an unjust enrichment claim in any context; these cases, however, are illustrative of the heavy burden imposed by Tennessee law on those claiming unjust enrichment where some consideration was in fact paid.

Likewise, the analysis regarding unjust enrichment in the situation where an hourly worker is underpaid is instructive in this case. In that situation, the plaintiff is required to provide evidence regarding: "(1) the nature of the services provided, (2) the period during which the services were provided, (3) the number of hours worked, and (4) the hourly rate customarily charged for these services." ***In re Estate of Marks***, 187 S.W.3d 21, 32 (Tenn. Ct. App. 2005).[3] The situation involved in this case, while not involving hourly wages, involves a similar situation where the plaintiff was paid for work performed but argues that the payment was inadequate compared to the benefit retained. In the situation involving the hourly worker, the worker-plaintiff must therefore present specific proof that the value of the benefit conferred was greater than the payment actually received, i.e., the unjustness of the arrangement. The same must be true in this case. In order for Mr. Cole to show the necessary element of unjustness, he must present competent proof that he conferred a benefit on Mr. Caruso beyond what he has previously been compensated for. The record, however, contains no such proof.

Turning to the evidence in the case, in his lengthy trial testimony, Mr. Cole describes the various ways he contributed to the Mr. Caruso and the East Coast Grays in 2010 and 2011. Mr. Cole succinctly summarizes this testimony in his brief:

> At trial Mr. Cole testified at length about the economic benefit Mr. Caruso reaped and retained from Mr. Cole's work for the East Coast Grays, including the hundreds of hours of time Mr. Cole devoted during 2010 and 2011. Mr. Cole and Mr. Caruso met regularly to discuss which tournaments to play, which teams to invite to their tournaments, camps and clinics they would organize, which uniforms to order, and which coaches to hire. They also met with prospective players and families to discuss their joining the organization.

---

[3] Although this case deals with a quantum meruit claim, courts have held that "[a]ctions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same." ***Paschall's, Inc.***, 407 S.W.2d at 154.

Mr. Cole used his own vehicle for thousands of miles of travel for East Coast Grays' business during 2010 and 2011, and Mr. Caruso often traveled with him. During Mr. Cole's tenure with the East Coast Grays, the number of paying players in their organization grew from less than one full team to three full teams.

As mentioned above, however, it is undisputed that Mr. Cole conferred benefits on Mr. Caruso and the East Coast Grays organization. Therefore, in our view, this testimony demonstrates only that Mr. Cole performed services for the organization, but lends no evidence to the central issue in this case—whether Mr. Caruso unjustly retained these benefits without proper payment for their value.

A thorough review of Mr. Cole's testimony reveals no evidence as to the value of any service that Mr. Cole performed beyond that which he had previously been compensated. For example, Mr. Cole makes much of the fact that he attended a tournament, allegedly on behalf of the organization, for which he expended funds. Specifically, Mr. Cole testified that

[t]here was never an objection to me going [to the tournament]. So I decided at that point for the future of the organization—and with that I paid for it out of my own pocket. I told [Mr. Caruso], I said, "Look, this is something I'm doing outside of the tournament. I will go ahead and pay for this trip for me and my son to go down to Florida for this pro showcase and the organization in the future." *So I paid for the flights. I paid for the rental car. I paid for the hotel, the food, everything for that trip. When I came back, all of a sudden—well, we'll get into that later.*

(Emphasis added). Mr. Cole, however, never revisited this issue in the remainder of his testimony. This testimony alone merely indicates that Mr. Cole voluntarily attended a tournament with his son in which he hoped to provide an ancillary benefit to the organization. *See Thomas v. Thomas*, No. W2016-01412-COA-R3-CV, 2017 WL 1404353, at *6 (Tenn. Ct. App. Apr. 17, 2017) (quoting *Clayton v. Brisendine*, 1990 WL 140910, at *3 (Tenn. Ct. App. Oct. 1, 1990)) (noting that in the context of unjust enrichment, "'[e]quity will not aid a volunteer. One who makes voluntary payments knowing all the facts, absent fraud or deceit, cannot subsequently sue to recover such payments even if they were paid without consideration and under no legal liability.'"). Even assuming that this trip was in fact taken as a service to the organization, Mr. Cole failed to offer any specific testimony that the compensation he received following this trip did not account for value of the benefit he conferred to the organization by taking it. As such, this evidence is insufficient to show that Mr. Caruso unjustly retained a benefit with regard to this incident.

- 9 -

Mr. Cole was asked at trial to place a value on the benefits he conferred upon Mr. Caruso and East Coast Grays. Mr. Cole's answer and the testimony surrounding this issue, however, provide no support for his unjust enrichment claim; rather, the evidence relates to the partnership theory that was ultimately rejected by the jury in this case. Specifically, when asked "what do you consider to be the reasonable value of the services that you rendered to the East Coast Grays organization including training and coaching athletes during 2010 and 2011[,]" Mr. Cole replied, "What I believe is reasonable is what we agreed to. We agreed to a 60/40 split and that was that and just because he doesn't want to work with me anymore doesn't mean that I'm not entitled to it. He's supposed to square it up." Although Dr. Scott, Mr. Cole's expert, did provide a specific figure for Mr. Cole's alleged share in the partnership, Dr. Scott's testimony did not concern the value of any benefits Mr. Cole conferred on Mr. Caruso and East Coast Grays or whether the benefit was greater than the compensation Mr. Cole received. Similarly, Mr. Cole and his attorney had this exchange during direct examination:

> Attorney: What was the total amount of money that Mr. Caruso paid you over 2010 and 2011?
>
> Mr. Cole: A total of $13,000.
> Attorney: Can you break that down?
> Mr. Cole: Yes, sir. $3,250 in the first year and just under $10,000 for 2011.
>
> Attorney: Did that amount meet your expectations?
> Mr. Cole: Not even close.
> Attorney: Why not?
> Mr. Cole: We had set up a conservative estimate, just being conservative because you don't ever want to overshoot and get your hopes up, so we had a conservative estimate that I would make around $40,000 and he would make around $60,000 and he said if he could make $60,000 that would be great. And I said if I could make $40,000 I can pay all of my bills and keep doing this.

Again, because Mr. Cole's testimony is focused on the alleged partnership, it does not contain any proof from which a fact-finder could conclude that the value of the benefit conferred upon Mr. Caruso exceeded the compensation that Mr. Cole received.[4] Instead,

---

[4] We note that the law is clear that in order to recover in quantum meruit, the measure of damages is not the contract price but the actual value of the services. *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995) (citing *Lawler v. Zapletal*, 679 S.W.2d 950, 955 (Tenn. Ct. App. 1984); *Warren Bros. Co. v. Metropolitan Gov't*, 540 S.W.2d 243, 247 (Tenn. Ct. App. 1976)). "[W]ithout some proof of the reasonable value of the goods or services[,]" courts cannot award damages based upon quantum meruit. *Castelli*, 910 S.W.2d at 428 (citing *Bokor v. Holder*, 722 S.W.2d 676, 680–81 (Tenn. Ct. App. 1986)) (noting that an estimate may be sufficient). Although quantum meruit may indeed constitute the most appropriate theory in this case, quantum meruit was not raised by either party in the trial court or in the

this evidence merely shows what Mr. Cole expected to receive as a result of the alleged partnership, not that the $40,000.00 figure quoted above was equivalent to the value of the benefit received by Mr. Caruso, for which Mr. Cole was inadequately compensated.

In the case at bar, Mr. Cole clearly received consideration for the benefits he conferred onto Mr. Caruso and the East Coast Grays. Although we decline to conclude that this consideration is fatal to Mr. Cole's unjust enrichment claim in this particular case, the complete lack of evidence establishing any inadequacy of the consideration paid leads us to conclude that Mr. Cole has shown "no injustice in allowing [Mr. Caruso] to retain those benefits without paying [Mr. Cole]" any additional compensation. *Bennett*, 198 S.W.3d at 756.

In conclusion, following a thorough review of the record, we discern no instance in which Mr. Cole testified as to the value of his services to Mr. Caruso or the organization so as to prove that the benefit conferred on Mr. Caruso was in excess of the compensation Mr. Cole has already received. Likewise, the proof contains no estimate of the value of any expenses incurred by Mr. Cole on behalf of the organization that were not reimbursed by Mr. Caruso. Consequently, we cannot conclude that this evidence is sufficient to prove that Mr. Caruso was actually unjustly enriched by Mr. Cole's services. Accordingly, taking the strongest legitimate view of the evidence presented in Mr. Cole's favor, we must conclude that he failed to provide any evidence that an injustice occurred by allowing Mr. Caruso to retain the benefits conferred by Mr. Cole. Mr. Cole therefore did not establish a prima facie case in the trial court, and the trial court erred when it failed to grant Mr. Caruso's motion for directed verdict. As such, all issues regarding additur are pretermitted.

## CONCLUSION

The judgment of the Circuit Court of Shelby County is reversed, and this cause is remanded to the trial court with instructions to dismiss the claim for unjust enrichment. The costs of this appeal are taxed to Plaintiff/Appellee Victor Cole, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

parties' appellate briefs. Again, we decline to proceed on an unargued theory.